**SIERRA PACIFIC POWER COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

and

**Utah Power and Light Company, Intervenor.**

No. 84–7627.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 15, 1985.

Decided July 8, 1986.

Reuben Goldberg, Joshua L. Menter, Goldberg, Fieldman & Letham, P.C., Washington, D.C., for petitioner.

A. Karen Hill, Michael E. Small, F.E.R.C., Washington, D.C., for respondent.

C. Hayden Ames, Chickering & Gregory, San Francisco, Cal., for Utah Power & Light Co.

On Petition to Review from Final Orders of the Federal Energy Regulatory Commission.

Before POOLE, NELSON and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

Sierra Pacific Power Company ("Sierra") petitions for review of the Federal Energy Regulatory Commission's ("FERC") orders permitting the costs of Utah Power and Light Company's ("UP & L") lower voltage transmission system to be rolled-in with the costs of its higher voltage system. Sierra argues that FERC's findings are not supported by substantial evidence and that FERC erroneously failed to follow its own precedent. We affirm.

## FACTS AND PROCEEDINGS BELOW

In January 1982, pursuant to section 205(d) of the Federal Power Act, 16 U.S.C. § 824d(d) (1982), UP & L filed with FERC revised rate schedules that increased electricity rates to its interstate resale customers. In March 1982, FERC accepted the revised rate schedules for filing, ordered a hearing concerning the reasonableness of the revised rates pursuant to 16 U.S.C. § 824d(e) (1982), and permitted several parties, including Sierra, one of UP & L's interstate resale customers, to intervene as objectors.

In June 1983, FERC accepted a settlement in the rate revision controversy with one exception. The unresolved issue concerned Sierra's (a higher voltage customer) disagreement with UP & L's use of the rolled-in allocation method. Sierra asserted, *inter alia*, that it should not have to pay for any of the forty-six and sixty-nine kilovolt transmission facilities because it receives no benefit from them.

The Administrative Law Judge's decision, issued in September 1983, held that res judicata barred relitigation of the issue because FERC had found rolled-in allocation appropriate in an earlier UP & L case. Nevertheless, the ALJ reached the merits of the case and concluded alternatively that rolled-in allocation was appropriate in the current proceeding. In May 1984, FERC rejected the ALJ's res judicata analysis but affirmed and adopted his decision to accept rolled-in allocation. In June 1984, pursuant to 16 U.S.C. § 825*l* (a) (1982), Sierra applied to FERC for rehearing. FERC denied the application in July 1984, and Sierra timely petitioned for review of FERC's opinion and order denying rehearing pursuant to 16 U.S.C. § 825*l* (b) (1982).

## DISCUSSION

### 1. Rolled-in Transmission Costs

FERC's finding that rolling-in transmission costs is permissible is a question of fact. *See Nevada Power Company v. Federal Power Comm'n*, 589 F.2d 1002, 1007 (9th Cir.1979) (roll-in of transmission costs reviewed by court under the substantial evidence standard); *cf. Anaheim v. Federal Energy Regulatory Comm'n*, 669 F.2d 799, 810 (D.C.Cir.1981) (allocation of hardware costs to distribution or transmission function is a question of fact). The Federal Power Act provides that "[t]he finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive." 16 U.S.C. § 825*l* (b). *Accord, Nevada Power Company*, 589 F.2d at 1006. Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion". *Consolidated Edison Company v. National Labor Relations Board*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). Deference to FERC's decisions is suitable because of "the breadth and complexity of the Commission's responsibilities" under the Federal Power Act, *Permian Basin Area Rate Cases*, 390 U.S. 747, 790, 88 S.Ct. 1344, 1372, 20 L.Ed.2d 312 (1968) (quoted in *Nevada Power Company*, 589 F.2d at 1005), and because this rate

case raises "numerous intricate and detailed contentions within the special competence of the Commission." *Nevada Power Company*, 589 F.2d at 1006. Moreover, it is the Commission's function to reach conclusions on conflicting engineering and economic issues so long as its judgment is reasonable and based on evidence. *City of Cleveland, Ohio v. Federal Power Commission*, 525 F.2d 845, 849 n. 36 (D.C.Cir. 1976).

When a utility uses the rolled-in allocation method for transmission costs, all customers share proportionately in the ownership, operation, and maintenance costs of all transmission facilities. If costs are not rolled-in, each customer class pays only for the transmission system that serves it. FERC favors rolled-in cost allocation when a system is integrated. *Fort Pierce Utilities Authority v. Federal Energy Regulatory Commission*, 730 F.2d 778, 782 n. 11 (D.C.Cir.1984) (citing *Otter Tail Power Company*, 12 FERC ¶ 61,169, at 61,420 (1980)). Intervenor UP & L supplies the best definition of integration in this record:

> Lower voltage transmission facilities are "integrated," ... when, in addition to being connected with higher voltage facilities, the lower voltage facilities are themselves interconnected and designed to operate in parallel. This is also referred to as "looping," that is, the lower voltage transmission facilities form parallel paths for electric energy with the higher voltage transmission facilities. The existence of two or more parallel transmission paths from sources of power to receiving points establishes integration. This is true even where one of the parallel paths is normally operated "opened," that is, with the connection broken by opening a switch.

Intervenor's Br. at 10. "[W]hen ... a higher voltage line goes out of service, power is automatically rerouted throughout the parallel 46 kilovolt system because of this "looping" or integration in accordance with the laws of physics." *Id.* at 11. The record confirms this definition.

In a previous UP & L rate case to which Sierra was a party, FERC held that UP & L's transmission costs should be rolled-in because UP & L's transmission system is integrated. *Utah Power & Light Company*, 11 FERC ¶ 63,017, pp. 65,078–79 (1980), aff'd, 14 FERC ¶ 61,162, p. 61,296, reh'g denied, 15 FERC ¶ 61,076, pp. 61,183–84 (1981). Because Sierra proposed a change from FERC's earlier conclusion that UP & L's transmission system costs should be rolled-in, Sierra was required to show by a preponderance of the evidence, *see Steadman v. Securities & Exchange Commission*, 450 U.S. 91, 101–02, 101 S.Ct. 999, 1007, 67 L.Ed.2d 69 (1981) (construing 5 U.S.C. § 556(d)), either that (1) the transmission system is not integrated, or (2) even though the system is integrated, the particular transmission lines at issue do not provide system-wide benefit. By such a showing, Sierra could overcome the presumption in favor of rolled-in allocation of transmission costs. *See New York State Electric & Gas Corp.*, 25 FERC ¶ 63,031, p. 65,070 (1983).

FERC, in affirming and adopting the ALJ's initial decision on the merits, noted that precedent strongly favors rolled-in allocation of transmission costs for integrated systems. The Commission found that Sierra had not met its burden of proving exceptional circumstances which would warrant departure from this policy. Specifically, FERC found (1) record evidence sufficiently demonstrated that UP & L's transmission system was integrated, and (2) Sierra did not show that the higher voltage transmission facilities received no benefit from the lower voltage facilities. Careful review of the record confirms the soundness of FERC's orders. *See, e.g., Central Lincoln Peoples' Utility District v. Johnson*, 735 F.2d 1101, 1129 (9th Cir. 1984) (rolled-in allocation method upheld because substantial evidence of system-wide benefit from higher voltage lines); *Public Service Company of Indiana v. Federal Energy Regulatory Commission*, 575 F.2d 1204, 1217–18 (7th Cir.1978) (rolled-in allocation method upheld because substantial evidence of system integration and system-

wide benefit from transmission radial lines).

■ Concerning the first finding—integration—in addition to FERC's prior determination that UP & L's transmission system is integrated, FERC staff and UP & L witnesses testified that the entire transmission system is looped and integrated. As the ALJ noted, studies submitted by Sierra show changes in magnitude and direction of power flows in lower voltage lines during higher voltage line outages, which demonstrates integration of the entire system. In addition, a Sierra witness stated that lower voltage lines can serve some higher voltage customers during higher voltage line outages. Sierra has, in fact, conceded that UP & L's transmission lines are integrated, although it maintains that such a finding is irrelevant since, under FERC precedent, the only relevant test is system-wide benefit.

Concerning the second finding of system-wide benefit, the ALJ quoted a Sierra witness's testimony describing studies Sierra submitted to support its contention that the lower voltage transmission facilities do not support the higher voltage facilities. The ALJ detailed Sierra's assertions concerning the results of the studies, and analyzed the significance of the studies. He concluded that the studies did not show that the lower voltage transmission facilities provide no benefit to the higher voltage transmission facilities. This conclusion is based essentially upon the finding that the studies fail to investigate whether higher voltage outages affect higher voltage customers when the lower voltage transmission lines are completely disconnected from the system. According to FERC, "[w]ithout such evidence, there can be no certainty that the higher voltage system receives no benefit from the lower voltage lines" (Opinion No. 220; Opinion and Order Affirming Initial Decision, 27 FERC ¶ 61,258, p. 61,487 (1984)).

■ Evaluation of the record with due deference to FERC's analyses of complex engineering studies supports the conclusion that Sierra's studies are deficient. Sierra contends that certain expert witnesses consider their studies adequate. Evaluation of testimony of experts, however, is for a factfinder. Substantial evidence supports FERC's factual finding that Sierra's studies were inadequate. UP & L's witnesses testified to the inadequacy of Sierra's studies. Further, the record contains evidence that establishes benefits from the lower voltage to the higher voltage customers. Several witnesses testified that the lower voltage transmission lines can substitute for higher voltage transmission lines during outages, thereby providing backup capability and permitting UP & L, and ultimately its customers, to avoid construction expenses for costlier high voltage transmission lines. In addition, witnesses testified that UP & L's system was intentionally integrated and looped for high efficiency at low cost. Finally, a Sierra witness testified that lower voltage lines can serve some customers during higher voltage line outages.

The record simply does not support Sierra's assertion that unanimous expert testimony shows that the lower voltage lines do not benefit the higher voltage lines. UP & L's staff witnesses testified that UP & L's system is integrated, that lower voltage transmission lines provide system-wide benefit, and, therefore, that rolled-in allocation is appropriate. Further, although not approving of the rolled-in allocation method, one of Sierra's own witnesses acknowledged that benefits flow from some lower voltage transmission lines to higher voltage transmission lines because of the lower voltage transmission lines' backup capability. The expert opinion was not unanimous. Sierra's witnesses' disagreement with the other witnesses, and ultimately with FERC's conclusions, does not warrant setting aside the orders so long as FERC's decision is reasonable and based on substantial evidence. *See City of Cleveland, Ohio,* 525 F.2d at 849 n. 36.

### 2. FERC Precedent.

■ FERC's policy of rolling-in transmission costs in integrated systems is ap-

parent from even a cursory examination of FERC and judicial decisions. See, e.g., Otter Tail Power Company, 12 FERC ¶ 61,-169, p. 61,420 (1980); Fort Pierce Utility Authority, 730 F.2d at 782 n. 11. Sierra's reliance on Minnesota Power & Light, 16 FERC ¶ 63,012 (1981), aff'd, 21 FERC ¶ 61,233, aff'd, *Cities of Aitkin v. Federal Energy Regulatory Commission,* 704 F.2d 1254, 1257 (D.C.Cir.1982) (per curiam), is misplaced. FERC thoroughly and persuasively discussed Sierra's contentions and concluded that Minnesota is distinguishable because the system in that case was not integrated. Substantial evidence supports FERC's finding that UP & L's system is integrated. Minnesota is therefore distinguishable and its analysis does not apply. Having concluded that the UP & L system is integrated, the appropriate course based on FERC precedent was to roll-in the transmission costs. Because FERC followed its policy, no justification for departure from precedent is necessary.

AFFIRMED.