**CITY OF HOLYOKE GAS & ELECTRIC DEPARTMENT, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Northeast Utilities Service Company, Intervenor.**

**No. 90–1565.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 25, 1991.

Decided Jan. 28, 1992.

Order on Denial of Rehearing March 31, 1992.

David J. Bardin, with whom Marilyn D. Sonn, Washington, D.C., was on the brief, for petitioner.

Samuel Soopper, Atty., FERC, with whom William S. Scherman, Gen. Counsel, Jerome M. Feit, Sol., and Joseph S. Davies, Deputy Sol., Washington, D.C., were on the brief, for respondent. Catherine Cook, Atty., FERC, Washington, D.C., also entered an appearance, for respondent.

Frederic Lee Klein, with whom Paul H. Keck and Brian R. Gish, Washington, D.C., were on the brief, for intervenor.

Before SILBERMAN, D.H. GINSBURG and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

The City of Holyoke Gas & Electric Department entered into a power transmission agreement with Northeast Utilities Service Co. (NU). When NU filed the agreement with the FERC, Holyoke challenged the rate on various grounds, but the Commission approved it. Holyoke now petitions for review, alleging that the Commission acted arbitrarily and capriciously in upholding the rate as reasonable, denying Holyoke's request for an evidentiary hearing on the question of undue discrimination, and waiving the statutory notice period for filing a rate agreement.

Although we do not take issue with the methodology the Commission used in order to determine that NU's proposed rate is reasonable, we remand for the FERC to make the factual findings necessary to justify use of that methodology in this case, and to provide sufficient explanation of its decision and the assumptions underlying it. We conclude that the Commission's refusal to grant Holyoke a hearing and its waiver of the statutory notice period were proper.

## I. BACKGROUND

Under a 1982 contract, NU charged Holyoke a rate of about $5 per kilowatt-year for nonfirm transmission of electrical power. Before that contract expired on October 31, 1988, NU notified Holyoke that the rate in the replacement contract would be raised to about $24 per kilowatt-year for the same service. Holyoke signed the renewal contract under protest and paid the increased rate as of November 1, 1988. Subsequently, Holyoke and NU negotiated two reductions of the renewal rate, which ultimately brought it down to about $11 per kilowatt-year.

During the eighteen-month period between the expiration of the old contract and the negotiation of the $11 rate, NU billed Holyoke under the terms of the applicable renewal agreement. NU did not file any of the new agreements with the Commission as required by § 205(e) of the Federal Power Act, Pub.L. No. 333, 49 Stat. 847 (1935) (codified as amended at 16 U.S.C. § 824d(e)), until Holyoke had, in April 1990, executed the $11 agreement without expressing any reservations.

When it did finally file that agreement, NU also asked the Commission to waive the sixty-day notice requirement of § 205(d) in order to give the agreement an effective date of November 1, 1988, as provided by its terms.

In June 1990, Holyoke filed a protest out of time, claiming that waiver of the statutory notice period was unjustified and that the proposed rate was unreasonable and discriminatory and would enable NU to earn an excessive return on its equity. The Commission allowed the protest, but accepted the $11 rate as reasonable after determining that NU could lawfully have charged even a significantly higher rate. In accordance with its longstanding practice of deferring where possible to the terms of a private agreement, the FERC also granted NU's request for a waiver of the statutory notice period. *Northeast Utilities Service Co.,* 52 FERC ¶ 61,097 (1990) (*NU Order*). Holyoke sought rehearing and, when the FERC denied it, *Northeast Utilities Service Co.,* 52 FERC ¶ 61,336 (1990) (*NU Rehearing*), petitioned this court for review.

## II. ANALYSIS

Holyoke now argues that the FERC was arbitrary and capricious in (A) finding NU's proposed rate reasonable, (B) denying Holyoke's request for a hearing at which to challenge NU's proposed rate as unduly discriminatory, and (C) waiving the statutory notice period. We consider these arguments in turn.

### A. The Reasonableness of the Proposed Rate

NU derived the $11 rate by determining the revenue it would require in order to recoup the costs it incurs to own and maintain those of its transmission facilities that are part of the New England Power Pool (NEPOOL), plus a 14.5% return on equity. Before the Commission, Holyoke maintained that the $11 rate is unreasonable on two grounds: 14.5% is too high a return on equity, and the city is entitled to the 50% "multi-system discount" that it formerly received. That discount was designed, by its terms, "to give due recognition of the payments made by [Holyoke] to other utility systems providing transmission service over [New England Power] Pool Transmission Facilities" for the same power.

Instead of evaluating the reasonableness of the proposed rate in light of Holyoke's specific objections, the Commission calculated the rate that NU could lawfully have charged Holyoke if it had "rolled in" the costs it incurs for all of its transmission facilities. Using this larger cost base and the lower return on equity proposed by Holyoke (11.25%), the FERC derived a comparison rate nearly double NU's proposed rate. The Commission therefore concluded that, *a fortiori,* NU's proposed "formula rate produces reasonable rates and provides Holyoke with a discount of about 47 percent from a rate level that would reflect a reasonable contribution to [NU's] rolled-in transmission costs." *NU Order,* 52 FERC at 61,487.

Holyoke takes issue with the Commission's use of a comparison rate based upon NU's rolled-in total costs—not in principle, for the practice seems eminently reasonable, but in the specific context of this case. The Commission did so upon the premise that in *Public Service Company of New Hampshire,* 46 FERC ¶ 61,419 (1989) (*PSNH*), it had "recently affirmed the reasonableness of evaluating transmission rates in the New England region on the basis of the utility's rolled-in transmission costs." *NU Order,* 52 FERC at 61,486 n. 12. Holyoke, however, argues first that "[t]he FERC's finding in *PSNH* was *utility-specific,*" made "in the context of the demonstrated and explained rolled-in cost of that one utility's facilities;" (emphasis original) and second that even if the use of rolled-in costs is proper in this case, the agency impermissibly failed to disclose the data and assumptions upon which it relied in calculating the comparison rate.

### 1. *Rolled-in Costs*

In reviewing the rate to be charged by an "integrated" transmission system—*i.e.,* an interconnected system designed to operate in parallel, *see Sierra Pac. Power Co. v. FERC,* 793 F.2d 1086, 1088 (9th Cir.1986)—the "FERC favors rolled-in cost allocation." *Id.* at 1086 (citing *Fort Pierce Util. Auth. v. FERC,* 730 F.2d 778, 782 n. 11 (D.C.Cir.1984), which in turn cites *Otter Tail Power Co.,* 12 FERC ¶ 61,169 at 61,-420 (1980)); *see also Detroit Edison Co.,* 54 FPC 3012 (1975). If a transmission system is not integrated, however, then a rate set on the basis of rolled-in costs would require some ratepayers to bear the costs of facilities from which they derive no benefit. *See Otter Tail,* 12 FERC at 61,420 (implicit in use of rolled-in costs is "assumption that all customers ... receive the benefits that are inherent in ... an integrated system").

In this case the Commission failed to determine that the NU system is integrated and thus could appropriately have used rolled-in costs in setting its rates; of course, if NU could not have done so, then the Commission could not uphold the $11 rate on the ground that it is less than the presumptively reasonable rolled-in rate. The simple fact is that, as Holyoke points out, the *PSNH* decision upon which the FERC relied does not purport to find that NU's transmission system is integrated. Although there are in the present record some hints to that effect—for example, Holyoke's own expert testified that the New England regional transmission system operates as "an extensively coordinated grid"—it is not the office of this court to determine in the first instance whether they amount to substantial evidence. Accordingly, we remand this matter for the Commission to justify its use of the rolled-in cost methodology in this case, presumably by finding that NU's transmission system is integrated.

### 2. *Failure to Disclose Calculations*

■ Holyoke also argues that even if the use of rolled-in costs is proper in this case, the Commission acted arbitrarily by failing to identify the data and assumptions it used in calculating the comparison rate. According to Holyoke, the use of rolled-in costs *could* result in Holyoke being charged for the cost of certain generator leads for which it already pays directly. On rehearing, the Commission first stated that "beyond bare allegations, Holyoke offers no support" for this claim and then suggested that Holyoke's admitted entitlement to share in certain revenue credits "will help eliminate any double counting that may have occurred." *NU Rehearing,* 52 FERC at 62,318 n. 41.

Insofar as the Commission rejected Holyoke's double counting claim for want of factual support, we think it has placed the shoe on the wrong foot. Holyoke could hardly document the degree to which the Commission's calculation of a comparison rate includes facilities for which it is already paying elsewhere so long as the Commission does not disclose that calculation. Insofar as the Commission relied upon Holyoke's entitlement to revenue credits as an offset for any such double counting, it implicitly acknowledged the problem only to rely upon a rough solution, the adequacy of which is unknown even to it. In further, if unintended, acknowledge-

ment of the problem it created by failing to disclose its calculations, the FERC now argues on brief that using publicly available information that NU has filed with the Commission, "Holyoke could easily determine that calculation of Northeast's rate based on system-wide transmission costs was consistent with the Commission's calculation."

While the Commission may ultimately be correct, we cannot, as a matter of administrative law, sustain its decision on the basis of such loose reasoning. The Commission must support its decision with enough data to enable an adversely affected party, and by extension a reviewing court, to understand its calculation of the comparison rate upon which it would rely, as well as the underlying assumptions. *See SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947) (basis for agency action "must be set forth with such clarity as to be understandable"); *Puerto Rico Maritime Shipping Auth. v. Federal Maritime Comm'n,* 678 F.2d 327, 336 (D.C.Cir.1982) ("agency must make clear the 'basic data and the whys and wherefores' of its conclusions") (quoting *Government of Guam v. Federal Maritime Comm'n,* 329 F.2d 251, 255 (D.C.Cir.1964)).

This requirement imposes no significant burden upon the Commission. Since it is already doing the relevant calculation, it is a small matter to abide by the injunction of the arithmetic teacher: Show your work! For the Commission to do less deprives the ratepayer of a rational explanation of its decision.

### B. The FERC's Refusal to Hold a Hearing

■ Holyoke also challenges the FERC's refusal to hold a hearing in order to look into Holyoke's allegation that NU's $11 rate is unduly discriminatory. *See* § 205(b). In support of that allegation, Holyoke points out that NU charges two other customers substantially lower rates for a higher priority of service than it charges Holyoke, and argues that the FERC unlawfully shifted to Holyoke the burden of proving discrimination.

The Commission rejected Holyoke's claim of undue discrimination because the other customers to which it pointed were not similarly situated. They pay lower rates only because they still enjoy the benefit of older contracts which, like Holyoke's 1982–88 contract, include a substantial discount for customers whose power is transmitted

over multiple NEPOOL systems. According to the Commission, "[NU] has systematically excluded these discounts from [its] newly executed agreements." *NU Order*, 52 FERC at 61,486. Thus, the FERC reasonably concluded that Holyoke had not made a proffer of evidence indicating undue discrimination; it had merely pointed to a transitional rate disparity.

■ Holyoke's claim that the FERC impermissibly shifted the burden of proving undue discrimination to it is similarly without merit. *See General Motors Corp. v. FERC*, 656 F.2d 791, 798 n. 20 (D.C.Cir. 1981). The threshold requirement that a complainant proffer evidence adequate to support its allegations before the Commission must grant a hearing screens out meritless hearing requests; it does not alter the requirement that a utility justify the reasonableness of its rates. Thus, the Commission quite properly refused to hold a hearing solely upon the basis of Holyoke's "bare allegations."

C. Waiver of the Statutory Notice Period

■ Finally, Holyoke claims that the FERC abused its discretion by waiving the 60–day notice period of § 205(d), and thereby allowing the $11 renewal rate to become effective retroactively to November 1, 1988. Section 205(d) authorizes the Commission to waive the 60–day notice period "for good cause." The Commission has previously determined that good cause is shown "when [1] the parties to the rate have agreed at some point in their negotiations on an effective date and [2] the waiver is in the public interest." *City of Girard v. FERC*, 790 F.2d 919, 925 (D.C.Cir. 1986).

First, Holyoke argues that it "agreed" to make the $11 rate retroactive only because it was under "economic duress;" if it had not signed the renewal agreement with NU, then pursuant to the NEPOOL agreement it would have incurred adjustment and deficiency charges amounting to $75 per kilowatt-year. Second, Holyoke alleges that it is NU's practice to delay filing for approval of new rates, and argues that such a practice is contrary to the public interest.

The Commission dismissed Holyoke's "bare-bones assertion" of economic coercion because Holyoke had not alleged that NU ever threatened to terminate its transmission service; on the contrary, the Commission reasoned, Holyoke's ability to negotiate two rate reductions "overcomes the suggestion of coercion." *NU Order*, 52 FERC at 61,488. The Commission also determined that NU delayed filing the agreement with Holyoke because the parties were still negotiating and not because NU had a general practice of intentionally delaying rate filings; "reasonable efforts to reduce controversy and to accommodate customers' concerns [are] entitled to some weight" in determining whether there is good cause for a delayed filing. *Id.*

We conclude that the FERC's waiver of the statutory notice requirement was proper. Nothing in the record supports Holyoke's factual allegation that NU has a history of delaying the filing of rate agreements; without that, its public interest argument fails. As for Holyoke's claim of economic duress, it nowhere alleges that NU engaged in any wrongful act or threat, whether termination of service or otherwise. Indeed, Holyoke's allegation of coercion amounts to nothing more than a lurid restatement of the undisputed fact that NU's refusal to renew their 1982 agreement on its old terms forced Holyoke to choose between two less desirable business arrangements.

In sum, the Commission's decision to waive the notice requirement in this case was entirely consistent with its longstanding policy to grant a waiver where the parties have contracted to make a rate effective retroactively and the waiver is not otherwise shown to be against the public interest. Accordingly, we uphold it.

III. CONCLUSION

Because the Commission did not establish on the record that NU's transmission system is integrated before using rolled-in total costs to calculate a comparison rate, and because it did not disclose the data and assumptions upon which it calculated that comparison rate, we remand this matter for the Commission to redetermine the reasonableness of NU's proposed $11 rate. We reject Holyoke's claim of undue discrimination and its assertion that the Commission acted arbitrarily in allowing the retroactive application of the rate called for in the agreement of the parties.

*So ordered.*

ORDER.

March 31, 1992.

Upon consideration of petitioner's petition for rehearing, filed March 12, 1992, it is

ORDERED, by the Court, that the petition is denied, as is more fully set forth in the attached statement of the Court.

In its petition for rehearing, Holyoke points to three items that it characterizes collectively as "ample and unchallenged evidence" in the record demonstrating that Northeast Utilities Service Company makes it a practice to delay the filing of its rate agreements. Holyoke first refers to a conclusory allegation made in its own administrative "Protest of Rate Schedule filing and Retroactivity to 1988, Motion to Intervene Out of Time, and Request for Substantive Relief and Expedited Procedure Under § 205 of the Federal Power Act." In that filing, Holyoke quotes a FERC staff member, who in a different case, reportedly said that "NU has a history of delaying the filing of rate schedules."

Second, Holyoke refers the panel to a letter from the FERC, which advises NU that its rate filings in yet another case had been accepted. Attached to that letter is a table entitled "Rate Schedule Designation," which shows when and with whom each of these rates had been negotiated. Comparing the dates of the agreements in the table with the date on which NU filed the rates, Holyoke argues "that NU had previously delayed the filing of four rate agreements for periods ranging from twenty months to more than four and one-half years."

Finally, Holyoke points to the testimony of its own Assistant Manager, who stated that "NU may take months or years before it gets around to submitting its transmission contracts to the FERC." The support for this assertion comes in an attached exhibit that with some interpretation does show a lag between the signing and filing of certain rate agreements.

Holyoke did not direct this court's attention, either in its briefs or at oral argument, to the evidence it now cites. Indeed, Holyoke devoted only one sentence of its entire brief to the argument that NU made a practice of delaying rate filings. Brief at 46. The only citation to the record contained thereat refers to an unsubstantiated assertion in Holyoke's "Request for Rehearing and Reconsideration" before the FERC. A party has an obligation to cite the portions of the record that substantiate its argument. *See* Fed.R.App.Proc. 28(a)(4), 28 U.S.C. (rules vol.) ("The argument shall contain the contentions of the appellant [and appellee] with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on.") Not having done so in the first instance, Holyoke's present attempt comes too late.

Accordingly, the Petition for Rehearing is denied.